DALE BERNARDO RATNER, ESQ. (SBN 278717)
1550 Hayes Street
San Francisco, CA 94117
Telephone: (415) 817-1200
DaleRatner@gmail.com

DAVID S. RATNER (*pro hac vice* pending)
MORELLI RATNER PC
950 Third Avenue, 11th Floor
New York, New York 10022
Telephone: (212) 751-9800
Facsimile: (212) 751-0046
DRatner@Morellilaw.com
*Attorneys for the Plaintiffs and the Proposed Class*



E-filing

LB

### UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF CALIFORNIA

LAUREEN BRIGGS, as an )
Individuals and on )
behalf of the Class, )
                     Plaintiff, )
                                 )
CARRIER IQ, INC.; )
HTC CORPORATION; )
HTC AMERICA, INC.; SAMSUNG )
ELECTRONICS CO., LTD )
                     Defendants )
                                 )

NO. CV11 6338

**CLASS ACTION COMPLAINT**

(1) VIOLATIONS OF THE ELECTRONIC
    COMMUNICATIONS PRIVACY ACT
(2) VIOLATIONS OF THE STORED
    COMMUNICATIONS ACT
(3) VIOLATIONS OF STATUTORY
    INVASION OF PRIVACY
(4) VIOLATIONS OF CALIFORNIA
    UNFAIR COMPETITION LAW
(5) TRESPASS TO CHATTELS

**DEMAND FOR JURY TRIAL**

## CLASS ACTION COMPLAINT

Plaintiff, Laureen Briggs, on behalf of herself and all others similarly situated, by her attorneys, Dale Bernardo Ratner and Morelli Ratner PC, and for the various causes of action against Defendants Carrier IQ, Inc., ("Carrier IQ"), HTC Corporation; HTC America Inc.; and Samsung Electronics, Inc. (the "Device Manufacturers") allege as follows:

## PARTIES

1.      Plaintiff Laureen Briggs, owns an iPhone 4, which is operating on AT&T's cellular network. Plaintiff Briggs is a citizen of the State of California, who resides in the County of San Francisco, California.

2.      Defendant, Carrier IQ, Inc., ("Carrier IQ") is a Delaware Corporation, with its principal place of business located at 1200 Villa Street, Suite 200, Mountain View, California, registered to do business in the State of New York. At all times relevant herein, Carrier IQ was doing business in the State of New York.

3.      Defendant HTC Corporation ("HTC") is a Taiwan Corporation and cellular device manufacturer located in Taoyuan, Taiwan. HTC has offices within the United States and sells its products throughout the United States, including throughout New York. It is also the parent corporation to Defendant HTC America, Inc.

4.      Defendant HTC America, Inc. ("HTC America") is a Washington corporation with its principal place of business in Bellevue, Washington. HTC sells its products throughout the United States, including throughout New York.

5.      Defendant Samsung Electronics Co., Ltd. ("Samsung") is a Korean company with its principal place of business at 1320-10, Seocho 2-dong, Seocho-gu, Seoul 137-857, South

Korea. Samsung sells its products throughout the United States, including throughout New
York.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331
in that plaintiff alleges violations of federal law, namely the Electronic Communications Privacy
Act, 18 U.S.C. §§ 2510 *et seq.* and the Stored Communications Act, 18 U.S.C. §§ 2701 *et seq.*
This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §
1367(a).

7.      This Court has personal jurisdiction over Defendants in this action by way of the
fact that Defendants are licensed to do business in the state of California or otherwise conduct
business in the state of California.

8.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 in that Plaintiffs are
residents of this District, many of the acts and transactions giving rise to this action occurred in
this District, and because Defendants:

      a.      Are authorized to conduct business in this District and have availed
themselves of the laws and markets within this District within by the
distribution and sale of their product in this District;

      b.      Do substantial business in this District; and,

      c.      Are subject to personal jurisdiction in the State of California and in this
District.

## GENERAL FACTUAL ALLEGATIONS
## COMMON TO ALL COUNTS OF PLAINTIFF'S COMPLAINT

9.      Carrier IQ is a software developer and manufacturer. "Carrier IQ, Inc. is the
world's leading provider of Mobile Service Intelligence solutions. Founded in 2005 and with a

management team steeped in the mobile telecoms industry, the company is privately held and funded by some of the leading players in the venture capital industry." www.carrieriq.com.

10. At issue in this lawsuit is whether Carrier IQ violated certain laws applicable to members of the Class by placing its patented Carrier IQ software on the wireless phone and/or handsets of the members of the Class, including Plaintiffs herein; using that software to track the information that the users of the phone (and/or handset) entered through their keystrokes, including such information as websites visited, messages to other individuals, recording of calls, and all other keystrokes, which were then recorded and relayed to Carrier IQ, Inc. for distribution to third parties – all without the consent or knowledge of the members of the Class, including Plaintiff herein.

11. By partnering with a variety of "wireless carriers" and manufacturers, the Carrier IQ software was placed on wireless phones running the Android OS, on iPhones and BlackBerrys, thereby allowing Carrier IQ to surreptitiously record all "key strokes" entered by the users into their phone or handheld device. The data surreptitiously captured is then sent to Carrier IQ, without the consent or knowledge of the individual using the phone or handheld device (*collectively referred to hereafter as* "handsets").

12. Upon information and belief, the information generated by recording the "keystrokes" (hereafter referred to generally as "keystroke data") was valuable to the wireless carriers and manufacturers who were customers of Carrier IQ. Because of the value of this keystroke data, Carrier IQ was able to surreptitiously install its Carrier IQ software into millions of handsets, by selling its software program to the wireless carriers and manufacturers.

13.     All Plaintiffs herein have handsets, which contain, upon information and belief, the Carrier IQ software program (*generically referred to hereafter as* "Carrier IQ software application").

14.     Upon information and belief, Carrier IQ boasts that its Carrier IQ software application is installed in more than 140,000,000 handsets in the U.S. alone. www.carrieriq.com.

15.     Upon information and belief, the Carrier IQ software application is what is known as a "rootkit" application, which, in general terms, means software that enables Carrier IQ access to a handset or information stored or logged in the handset, but which is hidden from the user or administrator by subverting standard operating system functions within the handset.  In other words, simply put, a "rootkit" application allows Carrier IQ access to the data on a user's handset without the knowledge of the user.

16.     Upon information and belief, Carrier IQ installed the Carrier IQ software application into handsets, such as the HTC Evvo, iPhone, and Blackberry at the requests of certain wireless carriers and manufacturers.

17.     Once a handset is sold, and immediately upon activation, the Carrier IQ software application begins tracking all keystrokes made by the user on that handset, even including supposedly encrypted web addresses, which are submitted via a secure socket layer (https) and are supposed to be encrypted from view.

18.     Upon information and belief, Carrier IQ, through its Carrier IQ software application, can also record phone calls and voicemails, and stores location and usage data.

19.     Upon information and belief, Carrier IQ, through its Carrier IQ software application,  is constantly tracking this keystroke data, even when the handset is not connected

via a wireless connection, so that a wireless carrier would not have any legitimate reason to be monitoring the usage of the handset (if such a reason could exist in the first instance).

20.    Upon information and belief, the Carrier IQ software application cannot be disabled, even by using a "Force Quit" button contained within the software application (if the software can even be located), which would make the user think the application has been turned off.

21.    Upon information and belief, Carrier IQ created this software application with the ability to log every keystroke and keystroke data entry on a handset, including the recording of phone calls and voicemails, and then granted the wireless carriers the ability to determine what keystroke data the wireless carrier wanted to capture from the unsuspecting users, who were not told that their devices were being monitored, and, likewise, were not told that the keystroke data was being shared with third parties.

22.    Upon information and belief, the wireless carriers, all of whom were customers of Carrier IQ, were also able to place events in the software application that would cause a user's handset to automatically send reports back to Carrier IQ or the wireless carrier that contained the keystroke data that Carrier IQ had stored, all without the user's knowledge or consent. (This feature is referred to generally hereafter as the "phone home feature.")

23.    In addition to the "phone home" feature, upon information and belief, Carrier IQ, and/or the wireless carriers, also maintained the ability to contact individual handsets, or a couple of handsets, running the Carrier IQ software application that would allow them to download the keystroke data from Carrier IQ software application that was running on a user's handset, all without the user's knowledge and/or consent.

24.     Carrier IQ's intent in the creation of this software application could not be clearer,

as the patent application for the software application reads, in pertinent part:

> 2.    A method for collecting data at a server coupled to a
> communications network, comprising: transmitting to a device a
> data collection profile, wherein the data collection profile
> comprises a plurality of parameters defining a set of data to be
> collected by the device, a first condition under which the set of
> data is to be collected, and a second condition under which the set
> of data is to be transmitted; and receiving from the device the set
> of data collected in response to the second condition.
>
> 10.   The method of claim 2, wherein the set of data relates to an end
> user's interaction with the device.
>
> 11.   The method of claim 10, wherein the interaction with the device
> comprises the end user's pressing of keys on the device.

Patent Application #20110106942, published May 5, 2011.

25.     By its own admission, Carrier IQ intended to create a software application

("method") to capture keystroke data, including voice recordings and other actions inputted by a

user on his/her handset.

26.     Carrier IQ developed said software application with the intent to sell the software

application to third party wireless carriers who, in conjunction with Carrier IQ, installed the

software application on the handsets purchased by the wireless carriers' customers. Thereafter,

Carrier IQ, in conjunction with the wireless carriers, willfully, intentionally, and surreptitiously

downloaded and tracked the keystroke data entered by the user of the handset, all without the

user's consent and/or knowledge.[1]

27.     In addition to the fact that Defendants willfully, intentionally and illegally

tracked, gathered and stored the keystroke data from the Plaintiff's handsets, the Defendants also

_____

[1] When Defendant's conduct was revealed in late November 2011 by a tech blogger, Carrier IQ sent a threatening
cease and desist letter threatening litigation which it subsequently withdrew when the blogger demonstrated video of
proof the Carrier IQ software application actively tracking all keystrokes on a phone.

"piggy-backed" on the available memory contained in the handsets of Plaintiff and members of the Class. Carrier IQ's unlawful taking of memory from the Plaintiff and members of the Class caused injury to the handset user because the owner of the handset did not receive the benefit of the bargain for which he/she had contracted.

28.     Specifically, when Plaintiffs purchased her respective handset, each handset had a specific value, all of which ranged between two hundred dollars and four hundred dollars, even with the agreement to a new or renewed service plan. Plaintiff's handset did not come with unlimited data storage or memory.

29.     Therefore, when the purchaser of the handset bought his/her device, he/she purchased the handset knowing that there was a limited, albeit advertised, amount of memory available. Therefore, the amount of memory available has a set value, differing only by the price of the handset.

30.     When the Defendants track, gather, and store the keystroke data on Plaintiff's handset, Carrier IQ intentionally and willfully deprives each and every user of the valuable memory and data storage capacity which the user bargained for in his/her purchase of the handset, all without informing the user and/or gaining his/her consent.

31.     Therefore, Carrier IQ, through its software application, has intentionally, willfully and illegally stolen storage memory from Plaintiff and each and every members of the Class. As a result of Carrier IQ's willful, intentional and illegal conduct, the value of the handset is decreased by the amount of memory unlawfully pirated by Carrier IQ, all without the knowledge of the user.

32.     Carrier IQ has profited from the illicit tracking, gathering and storage and subsequent transmission of the keystroke data entered by Plaintiff and members of the Class,

considering that Carrier IQ has infected over 140,000,000 handsets with the Carrier IQ software application.

33.     Upon information and belief, Carrier IQ has profited from the sale and/or licensing of this software application to the wireless carriers and handset manufacturers by advertising that the Carrier IQ software application "give[s] Wireless Carriers and Handset Manufacturers unprecedented insight into their customers' mobile experience." www.carrieriq.com.

34.     Plaintiff and members of the proposed Class were further harmed because their handset were used in ways without their consent or permission, and without their knowledge, because their personal information was willfully and intentionally stolen and transmitted via the internet, and may have been stolen while being broadcast.

35.     Carrier IQ has violated several federal laws regarding the access of personal information via computer devices and over wire communications, including the Electronic Communications Privacy Act (18 U.S.C. §2511 *et seq.*) and the Stored Communications Act (18 U.SC. §2701 *et seq.*), and various California state laws including California Penal Code § 631, California Penal Code § 637.2, California Business and Professions Code § 17200, *et seq.* and the common law tort of trespass to chattels.

36.     Even without a specific injury in fact, statutory damages are available to Plaintiff and members of the Class for violations of the Electronic Communications Privacy Act (18 U.S.C. §2511 *et seq.*), the Stored Communications Act (18 U.SC. §2701 *et seq.*) and Plaintiff's state law claims including California Penal Code § 631, California Penal Code § 637.2, California Business and Professions Code § 17200, *et seq.* and the common law tort of trespass to chattels.

COUNT I
**VIOLATION OF 18 U.S.C. § 2511 – ELECTRONIC COMMUNICATIONS PRIVACY ACT – INTERCEPTION AND DISCLOSURE OF WIRE, ORAL OR ELECTRONIC COMMUNICATIONS PROHIBITED**

For Count I of her cause of action on behalf of herself and all others similarly situated, Plaintiff alleges the following:

37.   Plaintiff hereby re-allege and incorporate herein paragraphs 1 through 36 as though fully set forth herein.

38.   The United States Code, at 18 U.S.C. § 2511 "Interception and disclosure of wire, oral, or electronic communications prohibited," states in pertinent part:

"(1) Except as otherwise specifically provided in this chapter, any person who—

(a)   Intentionally intercepts, endeavors to intercept or procures any other person to intercept or endeavor to intercept, any wire, oral or electronic communication;

(b)   Intentionally uses, endeavors to use, or procures any other person to use or endeavor to use any electronic, mechanical, or other device to intercept any oral communication when—

(i)   such device is affixed to, or otherwise transmits a signal through, a wire, cable, or other like connection used in wire communication; or

(ii)   such device transmits communications by radio, or interferes with the transmission of such communication; or

(iii)   such person knows, or has reason to know, that such device or any component thereof has been sent through the mail or transported in interstate or foreign commerce; or

(iv)   such use or endeavor to use (A) takes place on the premises of any business or other commercial establishment the operations of which affect interstate or foreign commerce; or (B) obtains or is for the purpose of obtaining information relating to the operations of any business or other commercial establishment the operations of which affect interstate or foreign commerce;

10
CLASS ACTION COMPLAINT

* * *

(c)    intentionally discloses or endeavors to disclose, to any other person the contents of any wire, oral or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral or electronic communication in violation of this subsection;

(d)    intentionally uses, or endeavors to use, the contents of any wire, oral or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection;

* * *

shall be punished as provided in subsection (4) or shall be subject to suit as provided in subsection (5).

28 U.S.C. § 2511.

39.    Carrier IQ created a software application that it surreptitiously installed on Plaintiff and the putative class members' handsets that tracked, gathered, stored, transferred, and removed keystroke data, including data communications and recorded and intercepted phone calls and voice messages to the handsets of Plaintiff and members of the Class, all without the knowledge of the Plaintiff and/or members of the Class.

40.    Upon information and belief, the Carrier IQ software application also willfully and intentionally took the intercepted keystroke data, and sent it to Carrier IQ, who then distributed the keystroke data to unauthorized third parties, all in violation of 18 U.S.C. § 2511.

41.    18 U.S.C. § 2520 allows the Plaintiff and members of the Class a private cause of action for the violation of 28 U.S.C. §2511.

42.    Further, 18 U.S.C. § 2520(c)(2) authorizes damages as follows:

(2)    In any other action under this section, the court may assess as damages whichever is the greater of -

11
CLASS ACTION COMPLAINT

      (A)   the sum of the actual damages suffered by the plaintiff and any profits made by the violator as a result of the violation; or

      (B)   statutory damages of whichever is the greater of $100 a day for each day of violation or $10,000.

43.   Plaintiff and members of the Class have suffered actual damages because of Carrier IQ's willful and intentional pirating of the memory available to each owner of the handset. Alternatively, Plaintiff and members of the Class are entitled to statutory damages.

44.   Further, 18 U.S.C. § 2520(b) allows for recovery of punitive damages, attorney's fees, and other litigation costs.

**COUNT II**
**VIOLATION OF 18 U.S.C. § 2512 – ELECTRONIC COMMUNICATIONS PRIVACY ACT – MANUFACTURE, DISTRIBUTION, POSSESSION AND ADVERTISING OF WIRE, ORAL OR ELECTRONIC COMMUNICATIONS INTERCEPTING DEVICES PROHIBITED**

For Count II of their cause of action on behalf of themselves and all others similarly situated, Plaintiff alleges the following:

45.   Plaintiff hereby re-alleges and incorporate herein paragraphs 1 through 36 as though fully set forth herein.

46.   The United States Code, 18 U.S.C. § 2512(1) "Manufacture, distribution, possession, and advertising of wire, oral, or electronic communication intercepting devices prohibited," states:

(1)   Except as otherwise specifically provided in this chapter, any person who intentionally –

(a)   sends through the mail or sends or carries in interstate or foreign commerce, any electronic, mechanical, or other device, knowing or having reason to know that the design of such device renders it primarily useful for the purpose of the surreptitious interception of wire, oral, or electronic communications;

(b)     manufactures, assembles, possesses, or sells any electronic, mechanical, or other device, knowing or having reason to know that the design of such device renders it primarily useful for the purpose of the surreptitious interception of wire, oral or electronic communications, and that such device or any component thereof has been or will be sent through the mail or transported in interests or foreign commerce; or

(c)     places in any newspaper, magazine, handbill or other publication or disseminates by electronic means and advertisement of –

(i)     any electronic, mechanical, or other device knowing the content of the advertisement and knowing or having reason to know that the design of such device renders it primarily useful for the purpose of the surreptitious interception of wire, oral or electronic communications; or

(ii)    any other electronic or mechanical, or other device, where such advertisement promotes the use of such device for the purpose of the surreptitious interception of wire, oral, or electronic communications, knowing the content of the advertisement and knowing or having reason to know that such advertisement will be sent through mail or transported in interstate or foreign commerce,

Shall be fined under this title or imprisoned not more than five years, or both.

18 U.S.C. § 2512(1)

47.     Carrier IQ created a software application that it surreptitiously installed on Plaintiff and the putative class members' handsets that tracked, gathered, stored, transferred, and removed keystroke data, including data communications and recorded and intercepted phone calls and voice messages to the handsets of Plaintiff and members of the Class, all without the knowledge of the Plaintiff and/or members of the Class.

48.     At the time Carrier IQ installed the Carrier IQ software application in handsets, Carrier IQ knew that the design of its software application and the design of the handset that contained the software application rendered the handset primarily useful for the purpose of the surreptitious interception of wire, oral or electronic communications, and that such handset and

its component part, i.e., the software application, would be sent through the mail or transported in interests or foreign commerce, all in violation of 18 U.S.C. § 2512(1).

49.     Further, Carrier IQ violated 18 U.S.C. § 2512(1) when it advertised via electronic means (i.e., its website) that the Carrier IQ software application when inserted into a handset, allowed "Wireless carriers and Handset Manufacturers unprecedented insight into their customers' mobile experience." Carrier IQ advertised its software application knowing, or having reason to know, that the design of such a component part device rendered the handset primarily useful for the purpose of the surreptitious interception of wire, oral or electronic communications, all in violation of 18 U.S.C. § 2512(1).

50.     18 U.S.C. § 2520 allows the Plaintiff and members of the Class a private cause of action for the violation of 28 U.S.C. §2511.

51.     Further, 18 U.S.C. § 2520(c)(2) authorizes damages as follows:

> (3)     In any other action under this section, the court may assess as damages whichever is the greater of -
>
> (A)     the sum of the actual damages suffered by the plaintiff and any profits made by the violator as a result of the violation; or
>
> (B)     statutory damages of whichever is the greater of $100 a day for each day of violation or $10,000.

52.     Plaintiff and members of the Class have suffered actual damages because of Carrier IQ's distribution and/or advertising of the handsets as devices primarily useful for the purpose of the surreptitious interception of wire, oral or electronic communications. Alternatively, Plaintiff and members of the Class are entitled to statutory damages.

53.     Further, 18 U.S.C. § 2520(b) allows for recovery of punitive damages, attorney's fees, and other litigation costs.

## COUNT III

### VIOLATION OF 18 U.S.C. § 2702(A) – VOLUNTARY DISCLOSURE OF CUSTOMER COMMUNICATIONS OR RECORDS

For Count III of her cause of action on behalf of themselves and all others similarly situated, Plaintiff alleges the following:

54.     Plaintiff hereby re-alleges and incorporate herein paragraphs 1 through 36 as though fully set forth herein.

55.     The United States Code, 18 U.S.C. § 2702(a) – Voluntary Disclosure of Customer Communications or Records, states:

(a)     Prohibitions. - Except as provided in subsection (b) or (c) -

    (1)     a person or entity providing an electronic communication service to the public shall not knowingly divulge to any person or entity the contents of a communication while in electronic storage by that service; and

    (2)     a person or entity providing remote computing service to the public shall not knowingly divulge to any person or entity the contents of any communication which is carried or maintained on that service -

        (A)     on behalf of, and received by means of electronic transmission from (or created by means of computer processing of communications received by means of electronic transmission from), a subscriber or customer of such service;

        (B)     solely for the purpose of providing storage or computer processing services to such subscriber or customer, if the provider is not authorized to access the contents of any such communications for purposes of providing any services other than storage or computer processing; and

    (2)     a provider of remote computing service or electronic communication service to the public shall not knowingly divulge a record or other information pertaining to a subscriber to or customer of such service (not including the contents of communications covered by paragraph (1) or (2)) to any governmental entity.

18 U.S.C. § 2702(a).

56.     At all times relevant herein, Carrier IQ was an entity providing an electronic communication service to the public through its development, manufacture, sale and use of the Carrier IQ software application.

57.     Carrier IQ created a software application that it surreptitiously installed on Plaintiff and the putative class members' handsets that tracked, gathered, stored, transferred, and removed keystroke data, including data communications and recorded and intercepted phone calls and voice messages to the handsets of Plaintiff and members of the Class, all without the knowledge of the Plaintiff and/or members of the Class.

58.     Contrary to the plain language of 18 U.S.C. § 2702(a), upon information and belief, Carrier IQ knowingly divulged to third persons and/or entities the contents of stored keystroke data taken surreptitiously from the handsets of Plaintiff and members of the Class while said keystroke data was placed in storage on the handsets of the Plaintiff and members of the Class.

59.     At the time Carrier IQ installed the Carrier IQ software application in handsets, Carrier IQ knew that the design of its software application and the design of the handset that contained the software application rendered the handset primarily useful for the purpose of the surreptitious interception of wire, oral or electronic communications, and that such handset and its component part, i.e., the software application, would be sent through the mail or transported in interests or foreign commerce, all in violation of 18 U.S.C. § 2512(1).

60.     Plaintiff and members of the Class have suffered actual damages because of Carrier IQ's distribution and/or advertising of the handsets as devices primarily useful for the purpose of the surreptitious interception of wire, oral or electronic communications. Alternatively, Plaintiff and members of the Class are entitled to statutory damages.

61.    18 U.S.C. §2707 allows the Plaintiff and members of the Class a private cause of action for the violation of 28 U.S.C. § 2702(a).

62.    Further, 18 U.S.C. § 2707 authorizes damages as follows:

(a)    **Cause of Action.—** Except as provided in section 2703 (e), any provider of electronic communication service, subscriber, or other person aggrieved by any violation of this chapter in which the conduct constituting the violation is engaged in with a knowing or intentional state of mind may, in a civil action, recover from the person or entity, other than the United States, which engaged in that violation such relief as may be appropriate.

(b)    **Relief.—** In a civil action under this section, appropriate relief includes—
(1)    such preliminary and other equitable or declaratory relief as may be appropriate;
(2)    damages under subsection (c); and
(3)    a reasonable attorney's fee and other litigation costs reasonably incurred.

(c)    **Damages.—** The court may assess as damages in a civil action under this section the sum of the actual damages suffered by the plaintiff and any profits made by the violator as a result of the violation, but in no case shall a person entitled to recover receive less than the sum of $1,000. If the violation is willful or intentional, the court may assess punitive damages. In the case of a successful action to enforce liability under this section, the court may assess the costs of the action, together with reasonable attorney fees determined by the court.

## COUNT IV
### VIOLATION OF STATUTORY INVASION OF PRIVACY – CALIFORNIA PENAL CODE SECTION 631

For Count IV of her cause of action on behalf of herself and all others similarly situated, Plaintiff alleges the following:

63.    Plaintiff hereby re-alleges and incorporates herein paragraphs 1 through 36 as though fully set forth herein.

64.     California Penal Code § 631 prohibits the intentional tapping of any telephone instrument, including an instrument of any internal telephonic communication system, and the unauthorized reading or learning, or attempted reading or learning, of any telephonic message, report, or communication within the State of California.

65.     Defendants have violated California Penal Code § 631 by monitoring, logging, and recording private information from movable devices without Plaintiff or Class Members' authorization. Defendants' software monitors, logs, and records keystrokes Plaintiff and Class Members make on their mobile devices, including phone numbers, text messages, and web browser searches.

66.     Defendants' conduct constitutes the intentional tapping of a telephone instrument in violation of California Penal Code § 631. It also constitutes the unauthorized reading or learning or attempted reading or learning of telephonic message and communication in violation of California Penal Code § 631.

67.     Plaintiff and Class Members have been injured by Defendants' conduct in that their actions and private information on their cellular phones have been monitored, logged, and recorded, jeopardizing the confidential nature of that information.

68.     California Penal Code § 637.2 permits a civil action for violation of California Penal Code § 631, authorizing an award of $5,000 for each violation as well as injunctive relief.

69.     Plaintiff and Class Members are entitled to these remedies, and to attorney's fees, as this lawsuit seeks the enforcement of an important right affecting the public interest and satisfies the statutory requirements for an award of attorneys' fees thereunder.

70.     As a direct result of Defendants' conduct, Plaintiff and Class Members have sustained and will continue to sustain injury and are entitled to statutory damages and injunctive relief to be determined at trial.

## COUNT V
## VIOLATION OF STATUTORY INVASION OF PRIVACY – CALIFORNIA PENAL CODE SECTION 632.7

For Count V of her cause of action on behalf of herself and all others similarly situated, Plaintiff alleges the following:

71.     Plaintiff hereby re-alleges and incorporates herein paragraphs 1 through 36 as though fully set forth herein.

72.     California Penal Code § 632.7 prohibits the intentional recording of any communication between cellular phones without the consent of all parties to the communication.

73.     Defendants have violated California Penal Code § 632.7 by intentionally, and without the consent of all parties to the communications, logging and recording communications by Plaintiff and Class Members on their cellular phones. Defendants' software monitors, logs, and records the keystrokes Plaintiff and Class Members make on their cellular phones, including text messages.

74.     Defendants' conduct constitutes the intentional and nonconsensual recording of a communication between cellular phones.

75.     Plaintiff and Class Members have been injured by Defendants' conduct in that their communications have been monitored, logged, and recorded – jeopardizing the private nature of those communications.

76.     California Penal Code § 637.2 permits a civil action for violation of California Penal Code § 632.7, authorizing an award of $5,000 for each violation as well as injunctive

relief. Plaintiff and Class Members are entitled to these remedies, and to attorneys' fees, as this lawsuit seeks the enforcement of an important right affection the public interest and satisfies the statutory requirements for an award of attorneys' fees thereunder.

77.     As a direct result of Defendants' conduct, Plaintiff and Class Members have sustained and will continue to sustain injury and are entitled to statutory damages and injunctive relief to be determined at trial.

**COUNT VI**
**VIOLATION OF THE UNFAIR COMPETITION LAW**
**(CAL. BUS. & PROF. CODE §§ 17200 *ET SEQ.*)**

For Count VI of her cause of action on behalf of herself and all others similarly situated, Plaintiff alleges the following:

78.     Plaintiff hereby re-alleges and incorporates herein paragraphs 1 through 36 as though fully set forth herein.

79.     California Unfair Competition Law (the "UCL") defines unfair competition to include any "unlawful, unfair, or fraudulent" business act or practice. Cal. Bus. & Prof. Code §§ 17200 *et seq.*

80.     Defendants engaged in "unlawful" business practices under the UCL because they violated the Electronic Communications Privacy Act (18 U.S.C. §2511 *et seq.*).

81.     Defendants engaged in "unlawful" business practices under the UCL because they violated the Stored Communications Act (18 U.SC. §2701 *et seq.*).

82.     Defendants engaged in "unlawful" business practices under the UCL because they violated California Penal Code § 631.

83.     Defendants engaged in "unlawful" business practices under the UCL because they violated California Penal Code § 632.7.

20
CLASS ACTION COMPLAINT

84.     Defendants engaged in "fraudulent" business practices under the UCL because they secretly installed the Carrier IQ software on Plaintiff and Class Members' handheld devices, failed to disclose that the Carrier IQ software was always operating on such devices, failed to disclose that the Carrier IQ software was capable of intercepting Plaintiff and Class Members' private communications and, in fact intercepted such communications and failed to disclose that the Carrier IQ software degraded the performance and battery life of the devices on which it was installed. Defendants' omissions and failures to disclose were "material" to Plaintiff and the class within the meaning of *In re Tobacco II Cases* 46 Cal. 4th 298, 325 (Cal. 2009).

85.     Defendant engaged in "unfair" business practices under the UCL based on the foregoing, and because they violated the laws and underlying legislative policies designed to protect the privacy rights of Californians and the rights of others which are affected by companies operating out of California. In particular Cal. Bus. & Prof. Code §§ 22947-22947.6 and the California Constitution, which provides:

ARTICLE 1 DECLARATION OF RIGHTS

SECTION 1.  All people are by nature free and independent and have inalienable rights.  Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy.

86.     Plaintiff and Class Members were injured in fact and lost money or property as a result of these unlawful, unfair, and fraudulent business practices.  In particular and without limitation, Plaintiff and Class Members did not get the performance level and battery life on their phones that they paid for because Carrier IQ software necessarily degraded such performance and battery life by constantly running on Plaintiff and Class Members' handheld devices.

## COUNT VII
## TRESPASS TO CHATTELS

21
CLASS ACTION COMPLAINT

For Count VII of her cause of action on behalf of herself and all others similarly situated, Plaintiff alleges the following:

87.     Plaintiff hereby re-alleges and incorporates herein paragraphs 1 through 36 as though fully set forth herein.

88.     The common law prohibits the intentional intermeddling with personal property, including electronic handheld devices, in the possession of another that results in the deprivation of the use of the personal property or impairment of the condition, quality, or usefulness of the personal property, or impairs some other legally protected interest, including the legally protected interest in privacy and confidential information.

89.     By engaging in the acts alleged herein without the authorization or consent of Plaintiff and Class Members, Defendants have dispossessed Plaintiff and Class Members from use and/or access to their personal confidential information. Further, these acts impaired the use, value, and quality of Plaintiff and Class Members' personal confidential information.

90.     Defendant's acts constituted an intentional interference with the use and enjoyment of Plaintiff's and Class Members' personal confidential information. By the acts described herein, Defendants repeatedly and persistently engaged in trespass to personal property in violation of the common law.

91.     Without Plaintiff and Class Members' authorization or consent, or in excess of any authorization or consent given, Defendants knowingly and intentionally accessed Plaintiff and Class Members' property, thereby intermeddling with Plaintiff and Class Members' right to exclusive possession of the property and causing injury to Plaintiff and Class Members.

92.     Defendants' installation and operation of its program used, interfered and/or intermeddled with Plaintiff and Class Members' handheld devices. Such use, interference and/or

intermeddling was without Plaintiff and Class Members' consent or, in the alternative, in excess of Plaintiff and Class Members' consent.

93. Defendants' installation and operation of its Carrier IQ software impaired the condition and value of Plaintiff and Class Member's handheld devices and personal confidential information.

94. As a direct and proximate result of Defendants' trespass to chattels, interference, unauthorized access, and intermeddling with Plaintiff and Class Members' property, Defendants have injured and impaired the condition and value of Class Members handheld devices and personal confidential information as follows:

        a. by consuming the resources of and/or degrading the performance of Plaintiff and Class Members' handheld devices (including hard drive space, memory, processing cycles, and Internet connectivity);

        b. by diminishing the use of, value, speed, capacity, and/or capabilities of Plaintiff and Class members' handheld devices;

        c. by devaluing, interfering with, and/or diminishing Plaintiff and Class Members' possessory interest in their handheld devices and personal confidential information;

        d. by altering and controlling the function of Plaintiff and Class Members' handheld devices and personal confidential information;

        e. by compromising the integrity, security, and ownership of Plaintiff and Class Members' handheld devices and personal confidential information; and

        f.  by forcing Plaintiff and Class Members to expend money, time, and resources in order to remove the program installed on their electronic device without notice or consent.

95.     Defendants' conduct constituted an ongoing and effectively permanent impairment of Plaintiff and Class Members' handheld devices and personal confidential information.

96.     Plaintiff, individually and on behalf of the Class, seeks injunctive relief restraining Defendants from such further trespass to chattels and requiring Defendants to account for its use of Plaintiff and Class Members' handheld devices and personal confidential information, account for personal information they have acquired, purge such data, and pay damages in an amount to be determined.

## NATIONWIDE CLASS ACTION ALLEGATIONS

97.     Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs on behalf of themselves

and all others similarly situated, seeks to represent the following nationwide Class:

> All United States citizens who owned a handset that contained the Carrier IQ
> software application that intercepted keystroke data where Carrier IQ failed to
> obtain the consent of handset owner and/or failed to inform the handset owner.
>
> Excluded from the Class are: 1) Any employees of the named Defendant,
> including its officers and agents, and the immediate family of those persons;
> 2) Plaintiffs' Counsel; and 3) the Judge of the Court to which this case is
> assigned.

98.     Plaintiffs and members of the nationwide Class have met the requirements of

Federal Rule of Civil Procedure 23(a) in that:

        A.      The nationwide Class so numerous that joinder of all members is

impractical.  Plaintiff's proposed Class is comprised of millions of users of handsets into which

Defendants have surreptitiously placed Carrier IQ software application. Moreover, the amount of

damages suffered individually by each member of the Class is so small as to make suit for its

recovery by each individual member of the Class economically unfeasible.  Class treatment of

the claims asserted herein will provide substantial benefit to both the parties and the Court

system.

        B.      There are common questions of law and fact applicable to the claims

asserted on behalf of the nationwide Class, all of which predominate over individual issues.

These common questions include, but are not limited to:

                1.      Whether Defendants willfully, knowingly, intentionally and
                        surreptitiously installed the Carrier IQ software application in the
                        handsets of Plaintiff and members of the nationwide Class;

                2.      Whether the Carrier IQ software application tracked, gathered and
                        stored keystroke data on the nationwide Class members' handsets;

3.    Whether the Carrier IQ software application transferred and/or removed data from the nationwide Class members' handsets;

4.    Whether Defendants, through the use of its Carrier IQ software application, intentionally intercepted or endeavored to intercept, or through a third party, intercepted any wire, oral or electronic communication from the nationwide Class members' handsets;

5.    Whether the nationwide Class members' handsets, or the Carrier IQ software application designed by Carrier IQ, transmits a signal through a wire or cable or other like connection used in wire communication, as defined in 18 U.S.C. § 2510, *et seq.*;

6.    Whether the nationwide Class members' handsets and/or the Carrier IQ software application, and the keystroke data obtained, meets the definitions specified by 18 U.S.C. § 2510;

7.    Whether Carrier IQ intentionally disclosed, or endeavored to disclose, to any other person, as defined by 18 U.S.C. § 2510, *et seq.*, the contents of any wire, oral or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral or electronic communication in violation of this subsection;

8.    Whether Carrier IQ intentionally used, or endeavored to use, the contents of any wire, oral or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication;

9.    Whether Carrier IQ had any legal justification to intercept, track, collect, store, transfer, or remove the keystroke data obtained from the members of the nationwide Class or the recording of phone calls and messages;

10.    Whether the conduct of Defendants violated 18 U.S.C. § 2511;

11.    Whether the conduct of Defendants violated 18 U.S.C. § 2512(1);

12.    Whether the conduct of Defendants violated 18 U.S.C. § 2702(a);

13.    Whether the conduct of Defendants violated California Penal Code § 631;

14.    Whether the conduct of Defendants violated § California Penal Code § 632.7;

Case4:11-cv-06338-LB   Document1   Filed12/15/11   Page27 of 30

15.  Whether the conduct of Defendants violated § California Penal
Code § 632.7

16.  Whether the conduct of Defendants violated § Cal. Bus. & Prof.
Code §§ 17200 *et seq*;

17.  Whether the conducts of Defendants violated the common law tort
of trespass to chattels;

18.  Whether the members of the nationwide Class have suffered an
injury in fact or are entitled to statutory damages;

19.  Whether the conduct of Defendants was willful, intentional and
malicious, justifying an award of punitive damages.

C.  The Plaintiff's claims are typical of the claims of the proposed nationwide
Class, in that the Plaintiff and members of the nationwide Class will all have had the Carrier IQ
software application inserted on their handsets. All will have had their keystroke data
intercepted unlawfully.

D.  Plaintiff will fairly and adequately represent and protect the interests of
the proposed nationwide Class. Plaintiff does not have any interests antagonistic to those of the
members of the nationwide Class. Further, Plaintiff has retained competent and experienced
counsel in the prosecution of this type of litigation.

99.  Plaintiff and members of the nationwide Class have met the requirements of
Federal Rule of Civil Procedure 23(b)(3) in that:

A.  The questions of law and/or fact common to the members of the
nationwide Class, as set forth above, predominate over any questions affecting only individual
members of the Class. The prosecution of separate actions by individual members of the
nationwide Class could lead to inconsistent or varying adjudications with respect to individual

27
CLASS ACTION COMPLAINT

members of the nationwide Class and could substantially impair or impede the ability of other Class members to protect their interests.

            B.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy because members of the Class number in the millions and individual joinder is impractical.  Further, the class action vehicle is the most appropriate and superior form for the fair and efficient adjudication of this claim, given that:

        (1)    Common questions of law or fact predominate over any individual questions that may arise, such that there would be enormous economies to the courts and the parties in litigating the common issues on a class-wide basis instead of a repetitive individual basis;

        (2)    Class Members' individual damage claims are too small to make individual litigation an economically viable alternative;

        (3)    Class treatment is required for optimal deterrence and compensation and for limiting legal expenses incurred by Class Members;

        (4)    Despite the relatively small size of the nationwide Class Members' individual claims, their aggregate volume, coupled with the economies of scale inherent in litigating similar claims on a common basis, will enable this case to be litigated as a nationwide class action on a cost-effective basis, especially when compared with repetitive individual litigation;

        (5)    No unusual difficulties are likely to be encountered in management of this action as a nationwide class action in that all questions of law or fact to be litigated at the liability stage are common and predominate as they relate to the nationwide Class; and,

        (6)    Class certification is fair and efficient because prosecution of separate actions would create a risk of adjudications with respect to individual members of the nationwide Class, which, as a practical matter, may be dispositive of the interests of other members not parties to the adjudication, or may substantially impair or impede their ability to protect their interests.

WHEREFORE, Plaintiff Laureen Briggs prays for an Order of this Court as follows:

A.    Certifying the nationwide Class as requested herein;

CLASS ACTION COMPLAINT

B.      Entering an Order appointing David S. Ratner of Morelli Ratner PC as counsel for the nationwide Class; and,

C.      For an award of the actual damages suffered by Plaintiff and members of the nationwide Class; and,

D.      For disgorgement of profits made by Defendants as a result of its violation of 18 U.S.C. § 2511 *et seq.* and 18 U.S.C. § 2702(a); and,

E.      Or, in the alternative, on behalf of the nationwide Class, for statutory damages of whichever is the greater of $100 a day for each day of violation or $10,000, as a result of Carrier IQ's violation of 18 U.S.C. §2511 *et seq.*; and,

F.      And, on behalf of the nationwide Class, for an award of the actual damages suffered by Plaintiffs and members of the nationwide Class and disgorgement of profits made by Carrier IQ as a result of its violation of 18 U.S.C. § 2702(a), but in no event shall the award be less than the sum of $1,000.00 per class member; and,

G.      On behalf of the nationwide Class, for punitive damages; and,

H.      On behalf of the nationwide Class, for attorney's fees and costs incurred as a result of the filing of this cause of action; and,

I.      On behalf of the nationwide Class, for injunctive relief prohibiting Carrier IQ from further violating 18 U.S.C. §2511 *et seq.* and 18 U.S.C. §2702(a); and,

J.      On behalf of the nationwide Class, enjoin Carrier IQ from tracking, gathering, storing, transferring, or removing the keystroke data and recordings of oral information made by Carrier IQ which was obtained from the handsets of Plaintiffs and members of the nationwide Class; and,

K.      For such other relief as this Court deems just under the circumstances.

**JURY TRIAL DEMANDED**

Plaintiff demands a trial by jury on all triable issues.

DATED: December 8, 2011

Respectfully submitted,

DALE BERNARDO RATNER, ESQ. (278717)
1550 Hayes Street
San Francisco, CA 94117
Telephone: (415) 817-1200
DaleRatner@gmail.com

By _Dale Ratner_

Dale Bernardo Ratner, Esq.

DAVID S. RATNER (*pro hac vice* pending)
MORELLI RATNER PC
950 Third Avenue, 11th Floor
New York, New York 10022
Telephone: (212) 751-9800
Facsimile: (212) 751-0046
DRatner@Morellilaw.com

*Attorneys for the Plaintiffs and the Proposed Class*